IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TAMMY K. COOPER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-2651 |
| | § | |
| CITY OF LA PORTE POLICE | § | |
| DEPARTMENT, ONE UNKNOWN | § | |
| OFFICER OF CITY OF LA PORTE | § | |
| POLICE DEPARTMENT, and | § | |
| SHELLEY FULLER | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the court[1] are Defendants' Motion for Summary Judgment (Doc. 33) and Defendants' Motion to Exclude or Limit the Testimony of Plaintiff's Expert Witness (Doc. 34). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendants' motion to exclude and **RECOMMENDS** that Defendants' motion for summary judgment be **GRANTED.**

### I.  Case Background

Plaintiff Tammy K. Cooper brought the present action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City of La Porte ("City") and an Unknown Police Officer, later identified as Matthew Davidson ("Davidson").

### A.  Factual Background

---

[1]  This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  Doc. 15.

On July 11, 2011, at 9:56 p.m., Janice Wheeler ("Wheeler") called the La Porte police department and reported having witnessed a vehicle driven by Shelly Fuller ("Fuller") nearly strike an approximately five-year-old girl on Thornwood Drive.[2]   Police officers Davidson and Jeffrey Henson ("Henson") were dispatched to the scene.[3]   Upon their arrival at 10:01 p.m., Davidson saw two children who appeared to be under the age of ten run from the edge of the street into the front door of a house.[4]   Davidson went to the house to investigate while Henson spoke with witnesses.[5]

Davidson encountered Plaintiff standing next to a minivan with its liftgate open near the house's garage.[6]   Davidson reported seeing groceries in the rear of the vehicle, while Plaintiff claims that only a twelve-pack of soda was in the minivan.[7]   He informed her that he was investigating a report that her children were playing outside unsupervised when one was almost struck by a

_____

[2]     See Doc. 33-2, Ex. B to Defs.' Mot. for Summ. J., La Porte Police Dep't Dispatch Event Report; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 41-42.

[3]     See Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. p. 46; Doc. 33-7, Ex. F to Defs.' Mot. for Summ. J., Dep. of Henson pp. 13-14.

[4]     See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 26, 52.

[5]     See Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. p. 38.

[6]     See id. p. 97; Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative.

[7]     See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-7, Ex. G to Defs.' Mot. for Summ. J., Pl.'s Dep. p. 203.

vehicle.[8]   Plaintiff  denied  that  the  incident  had  occurred  and  stated  that  she  had  been  supervising  the  children.[9]  Davidson  felt  the  hood  of  the  minivan  and  it  was  hot  to  the  touch,  consistent  with  the  heat  of  a  vehicle  that  had  been  recently  driven.[10]

Davidson  then  met  with  Henson,  who  related  information  he  had  gathered  from  Fuller  and  Wheeler.[11]   Fuller  reported  that  at  9:45  p.m.  she  was  driving  slowly  when  she  looked  to  the  left  and  saw  Plaintiff's  daughter  ride  a  motorized  scooter  in  front  her.[12]  Fuller  stated  that  she  had  to  abruptly  apply  the  brakes  to  avoid  hitting  the  child.[13]   According  to  Fuller,  she  then  parked  the  car  and  told  the  children  that  they  needed  to  stay  out  of  the  street.[14]  Fuller  stated  that  she  walked  to  Plaintiff's  house  but  did  not  see  Plaintiff.[15]   Fuller  then  asked  Wheeler,  who  had  witnessed  the  incident,  to  call  the  police.[16]   At  that  point,  Plaintiff  exited  the

---

[8]    See Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 97-98

[9]    See id. p. 98; Doc. 33-7, Ex. G to Defs.' Mot. for Summ. J., Pl.'s Dep. pp. 121-22.

[10]    See id.

[11]    See Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. p. 84.

[12]    See id. p. 79; Doc. 33-3, Ex. C to Defs.' Mot. for Summ. J., Fuller's Statement.

[13]    See Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. p. 79.

[14]    See Doc. 33-3, Ex. C to Defs.' Mot. for Summ. J., Fuller's Statement.

[15]    See id.

[16]    See id.

house while talking on the phone.[17]   Wheeler confirmed Fuller's account, stating that she had witnessed the incident while walking Fuller's dog.[18]

Davidson then questioned Plaintiff further regarding the incident.[19]  Plaintiff responded that she did not wish to answer any other questions and that Davidson could speak to her attorney.[20] At this time, Plaintiff's twenty-year-old son came outside the home and carried in either groceries, according to Davidson, or the twelve-pack of soda, according to Plaintiff, from the minivan.[21]

Davidson contacted a Harris County Assistant District Attorney in the Intake Division and requested input as to whether an arrest should be made and, if so, what criminal charges should be filed.[22] The Assistant District Attorney advised that probable cause existed

---

[17]    See id.; Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 84-85

[18]    See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-1, Ex. A to Defs.' Mot. for Summ. J., Wheeler's Statement.

[19]    See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 38-39.

[20]    See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative.

[21]    See id.; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. p. 103; Doc. 33-7, Ex. G to Defs.' Mot. for Summ. J., Pl.'s Dep. p. 203.

[22]    See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 119-120.

for the charge of abandoning or endangering a child.[23]  Davidson placed Plaintiff under arrest at 10:14 p.m.[24]

A criminal information was filed against Plaintiff on July 12, 2011, charging her with endangering a child, a felony.[25]  A Harris County grand jury returned an indictment against Plaintiff on September 23, 2011.[26]  The charge was later dropped.[27]

### B.  Procedural Background

Plaintiff brought the present action against the City, Davidson, and Fuller on September 6, 2012, alleging Section 1983 claims against the City and Davidson and a defamation claim against Fuller.[28]  On September 28, 2012, Plaintiff non-suited Fuller.[29]  The City moved to dismiss for failure to state a claim on October 2,

---

[23]    See Doc. 33-4, Ex. D to Defs.' Mot. for Summ. J., Reporting Officer Narrative; Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. pp. 119-120.

[24]    See Doc. 33-5, Ex. E to Defs.' Mot. for Summ. J., Davidson's Dep. p. 52.

[25]    See Doc. 33-29, Ex. aa to Defs.' Mot. for Summ. J., Information.

[26]    See Doc. 33-30, Ex. bb to Defs.' Mot. for Summ. J., Indictment.

[27]    See Doc. 1, Pl.'s Am. Compl. p. 4.

[28]    See Doc. 1, Pl.'s Orig. Compl. pp. 1-2.  In Plaintiff's original complaint, she named the City of La Porte Police Department as a defendant.  See Doc. 1, Pl.'s Orig. Compl.  The police department is not a separate legal entity and cannot be sued in its own name.  However, in her amended complaint, Plaintiff named the City, not the police department, as the entity that allegedly violated her constitutional rights.  See Doc. 11, Pl.'s 1st Am. Compl.

[29]    See Doc. 4, Notice of Dismissal; Doc. 5, Order of Dismissal of Shelly Fuller.

2012.[30]  Plaintiff filed an amended complaint on October 12, 2012.[31]
With respect to the city, Plaintiff alleged that the City had a
custom of deliberate indifference in its practice of hiring police
officers, failed to train its police officers to properly
investigate criminal offenses, failed to instruct its officers on
the probable cause standard, and failed to instruct its officers on
the Texas Penal Code and Texas Code of Criminal Procedure.[32]
Plaintiff further alleged that the City had a custom of deliberate
indifference to the rights of its citizens by failing to supervise
its police officers.[33]

On March 26, 2013, the court issued a memorandum and
recommendation granting the City's motion to dismiss with respect
to Plaintiff's claims concerning a lack of adequate hiring
practices and a lack of supervision of its police officers and
denying it with respect to Plaintiff's claims of inadequate
training.[34]

On September 13, 2012, Defendants filed the pending motions
for summary judgment and to exclude or limit the testimony of

---

[30]    See Doc. 6, The City's Mot. to Dismiss.

[31]    See Doc. 11, Pl.'s Am. Compl.

[32]    See id. p. 6.

[33]    See id.

[34]    See Doc. 18, Mem. & Recommendation Dated March 26, 2013.

Plaintiff's expert.[35]   Plaintiff responded to both motions on October 4, 2013.[36]   Defendants filed replies on October 10 and October 14, 2013.[37]

## II. Motion to Exclude

### A.   <u>Expert Testimony Legal Standard</u>

Defendants move to exclude or limit the testimony of Plaintiff's proffered expert, Eugene Kropff ("Kropff").

The Federal Rules of Evidence and related case law require that an expert be qualified and that the expert's testimony be both reliable and relevant.  Fed. R. Evid. 702; <u>see</u> <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579, 588 (1993); <u>Smith v. Goodyear Tire & Rubber Co.</u>, 495 F.3d 224, 227 (5th Cir. 2007).  The burden of establishing this predicate for the expert's testimony naturally falls on the party producing the expert.  <u>Moore v. Ashlad Chem. Inc.</u>, 151 F.3d 269, 276 (5th Cir. 1998).  The trial court determines whether that party has met its burden.  <u>See</u> Fed. R. Evid. 104(a); <u>Moore</u>, 151 F.3d at 276.

The expert may be qualified by "knowledge, skill, experience, training, or education."  Fed. R. Evid. 702.  "To qualify as an expert, 'the witness must have such knowledge or experience in

---

[35]   <u>See</u> Doc. 33, Defs.' Mot. for Summ. J; Doc. 34, Defs.' Mot. to Exclude.

[36]   <u>See</u> Doc. 35, Pl.'s Resp. to Defs.' Mot. to Exclude; Doc. 36, Pl.'s Resp. to Defs.' Mot. for Summ. J.

[37]   <u>See</u> Doc. 38, Defs.' Reply in Supp. of Mot. to Exclude; Doc. 39, Defs.' Reply in Supp. of Mot. for Summ. J.

[his] field or calling as to make it appear that his opinion or
inference will probably aid the trier in his search for truth.'"
United States v. Hicks, 389 F.3d 524, 524 (5th Cir. 2004) (quoting
United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992)).
Testimony that is not scientific in nature is better judged by
examining whether the expert has sufficient personal knowledge,
work experience, or training to support the opinions offered.  See
Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150-
51 (1999).  In general, the court's responsibility "is to make
certain that an expert . . . employs in the courtroom the same
level of intellectual rigor that characterizes the practice of an
expert in the relevant field."  Kumho Tire Co., 526 U.S. at 152.

     The U.S. Supreme Court's decision in Daubert "provides the
analytical framework for determining whether expert testimony is
admissible under Rule 702."  Pipitone v. Biomatrix, Inc., 288 F.3d
239, 243 (5th Cir. 2002).  Both scientific and nonscientific expert
testimony is subject to the Daubert framework, which requires trial
courts to make a preliminary assessment to "determine whether the
expert testimony is both reliable and relevant."  Burleson v. Tex.
Dep't of Criminal Justice, 393 F.3d 577, 584 (5th Cir. 2004).

     Reliability hinges on the sufficiency of the facts or data
upon which the opinion is based, the dependability of the
principles and methods employed, and the proper application of the
principles and methods to the facts of the case.  Fed. R. Evid.

702; <u>Smith</u>, 495 F.3d at 227.   The expert's methodology must be scientifically grounded and cannot be based on mere conjecture or speculation.   <u>See</u> <u>Daubert</u>, 509 U.S. at 590.   If the opinion is based solely or primarily on experience, the witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts.   Fed. R. Evid. 702, Advisory Committee Notes.

To be relevant, the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; <u>Daubert</u>, 509 U.S. at 591.   That is, it must have the tendency to make any material fact "more probable or less probable than it would be without the evidence."   Fed. R. Evid. 401; <u>see also</u> <u>Knight v. Kirby Inland Marine Inc.</u>, 482 F.3d 347, 352 (5th Cir. 2007) (quoting <u>Daubert</u>, 509 U.S. at 593, as stating that relevance relates to whether the reasoning or methodology is a proper fit with the facts of the case).

The bottom line is:

> The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded.

Fed. R. Evid. 702, Advisory Committee Notes.

9

**B.**   <u>**Analysis**</u>

Among other arguments, Defendants contend that Kropff's opinions will not assist the trier of fact.  Plaintiff tenders Kropff as qualified to testify as to "what are acceptable and good practices and procedures for police officers."[38]  In his report, Kropff offers several opinions regarding the quality of Davidson's investigation.  Specifically, Kropff contends that: (1) Davison's incident report is lacking in detail; (2) the incident report "does not provide a complete and accurate portrayal of visibility at the scene;" (3) the incident report does not accurately portray the roadway; (4) Davidson did not take into account the size and reflectivity of the scooters when determining the children's visible profile; (5) Davidson did not sufficiently investigate the circumstances surrounding the near collision; (6) Davidson failed to consider that Plaintiff's adult son could have been the suspect; and (7) there was an overall lack of investigation at the incident scene.  On the basis of these opinions, Kropff further concludes that "no reasonable officer would have believed that probable cause existed to arrest [Plaintiff] for Abandoning or Endangering a Child.[39]

Kropff also opines that Davidson did not have the statutory

---

[38]     <u>See</u> Doc. 35, Pl.'s Resp. to Defs.' Mot. to Exclude p. 1.

[39]     <u>See</u> Doc. 35-3, Ex. 2 to Pl.'s Resp. to Defs.' Mot. to Exclude, Kropff's Report p. 2.

authority to make a warrantless arrest of Plaintiff and that Davidson would have known that he had neither probable cause nor statutory authority to arrest Plaintiff had he been properly trained.[40]

In order to prevail in her claim against Davidson, Plaintiff must overcome Davidson's claim to qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Babb v. Dorman, 33 F.3d 472, 477 (5th Cir. 1994). As discussed more fully below, Davidson is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstance of which Davidson was aware, there was a "fair probability" that Plaintiff had committed or was committing an offense. See Haggerty v. Tex. S. Univ., 391 F.3d 653, 656 (5th Cir. 2004).

Kropff's first seven conclusions relate not to the issue of whether the totality of the facts and circumstances within Davison's knowledge at the moment of arrest were sufficient to establish a fair probability that Plaintiff had committed an offense, but rather to whether Davidson conducted his investigation in line with what Kropff believed to be adequate procedures. For

---

[40]    See id.

11

example, Kropff opines that, in addition to interviewing the adult witnesses, Davidson should have questioned Plaintiff's children, that Davidson and Henson should have "cross-investigated, or switch[ed] off while interviewing involved parties due to stalled communication or a negative rapport," and that Fuller and Wheeler should have been interviewed separately.[41]

Kropff's opinions miss their target. The issue to be decided by the fact finder is not whether Davidson conducted his investigation according to recommended or "best" procedures. Rather, it is whether there was a fair probability that Plaintiff had committed an offense.

Kropff references the probable cause standard at times in his report, for example, stating that Davidson's incident report "is lacking in critical detail necessary to substantiate probable cause."[42]   However, Kropff then proceeds to simply set forth what he views as deficiencies in Davidson's investigation. His opinions do not actually relate to whether Davidson acted reasonably given the totality of the circumstances. Likewise, while Kropff does offer his opinion that no reasonable officer would have believed probable cause existed, he bases this opinion solely on the seven conclusions listed above, and fails to address the fact that an assistant district attorney authorized Davidson to arrest Plaintiff

---

[41]   See id. p. 9.

[42]   See id. p. 3.

for child endangerment.  Kropff does not purport to evaluate the totality of the circumstances within Davidson's knowledge at the time of the arrest.  Thus, Kropff's testimony would not "assist the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702; Daubert, 509 U.S. at 591.

Kropff's additional opinion regarding whether Davidson had statutory authority under Texas law to make a warrantless arrest of Plaintiff is also irrelevant.  Whether Kropff acted with statutory authority in arresting Plaintiff is not at issue in the case.  "[A] federal civil rights action will not lie for a warrantless misdemeanor arrest in violation of state law."  Aujla v. Hinds Cnty, Miss., 61 F. App'x 917, 2003 WL 1098839, at *2 (5th Cir. 2003) (unpublished) (quoting Fields v. City of South Houston, Tex., 922 F.2d 1183, 1189 (5th Cir. 1991)).  "The states are free to impose greater restrictions on arrests, but their citizens do not thereby acquire a greater federal right."  Fields, 922 F.2d at 1189 (quoting Street v. Surdyka, 492 F.2d 368, 371-72 (4th Cir. 1974)).  Accordingly, Kropff's opinion as to whether Davidson acted with statutory authority will not assist the fact-finder in this case.

Lastly, Kroff's opinion on how Davidson's investigation reflects on the City's training program is likewise not relevant.  "In resolving the issue of a city's liability, the focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be

unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." <u>Canton</u>, 489 U.S. at 390-91 (1989).   Kropff does not express an opinion as to the adequacy of the City's training program.   Rather, he simply opines that Davidson's actions reflect a failure to train on the part of the City.   The court finds that this testimony would not assist the trier of fact to understand the evidence in this case. Accordingly, Defendants' motion to exclude Kropff's testimony is **GRANTED.**

### III. Motion for Summary Judgment

### A.   <u>Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); <u>Celotex Corp. V. Catrett</u>, 477 U.S. 317, 322 (1986); <u>Brown v. City of Houston, Tex.</u>, 337 F.3d 539, 540-41 (5th Cir. 2003).   A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.   <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Ameristar Jet Charter, Inc. V. Signal Composites, Inc.</u>, 271 F.3d 624, 626 (5th Cir. 2001).   To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.   <u>Anderson</u>, 477 U.S. at

14

250; <u>TIG Ins. Co. v. Sedgewick James of Wash.</u>, 276 F.3d 754, 759 (5th Cir. 2002).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show that the facts are not in dispute, the party opposing summary judgment must go beyond the pleadings and proffer evidence demonstrating that genuine issues of material fact do exist that must be resolved at trial. <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co. v. Tiner Assocs. Inc.</u>, 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." <u>Honore v. Douglas</u>, 833 F.2d 565, 567 (5th Cir. 1987).

**B.   <u>Analysis</u>**

**1.   <u>Plaintiff's Claim Against Davidson</u>**

Plaintiff asserts a Section 1983[43] false arrest claim against Davidson. Defendants contend that Plaintiff's claim against Davidson fails because he is entitled to qualified immunity.

Qualified immunity shields government officials performing discretionary functions from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Babb, 33 F.3d at 477. "When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002). To demonstrate the inapplicability of the defense, the plaintiff must satisfy a two-prong test: "First, he must claim that the defendants committed a constitutional violation under current law. Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." Atteberry v. Nacona Gen. Hosp., 430 F.3d 245, 253 (5th Cir. 2005) (citations omitted). The court may conduct the two-pronged inquiry in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The Fourth Amendment requires that an arrest be supported by

---

[43]     The provision reads, in relevant part:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

a properly issued arrest warrant or probable cause.  See Glenn v. City of Tyler, 242 F.3d 307, 313 (5th Cir. 2001).  Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect has committed or was committing an offense."  Id. (quoting Spiller v. Texas City, 130 F.3d 162, 165 (5th Cir. 1997)).  Therefore, Davidson is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts and circumstances of which Davidson was aware, there was a "fair probability" that Plaintiff had committed or was committing an offense.  See Haggerty, 391 F.3d at 656; see also, United States v. Watson, 273 F.3d 599, 602 (5th Cir. 2001) (explaining that probable cause's "fair probability" requires more than a bare suspicion but less than a preponderance of evidence).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."  Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2085 (2011).  "[I]t protects all but the plainly incompetent or those who knowingly violate the law."  Id. "Even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity." Gibson v. Rich, 44 F.3d 274, 277 (5th Cir. 1995).

The court begins its analysis with the second prong and concludes that because Davidson was not "objectively unreasonable"

17

in believing there was probable cause to arrest Plaintiff, he is entitled to qualified immunity.  The court determines whether an officer was objectively unreasonable after taking into account the totality of the circumstances at the time the arrest was made. Crostley v. Lamar Cnty., Tex., 717 F.3d 410, 422-23 (5th Cir. 2013).

Plaintiff was charged with endangering a child.[44]  Child endangerment occurs when "[a] person . . . intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment."  Tex. Penal Code Ann. § 22.041(c).

In finding probable cause to make the arrest, Davidson relied on Fuller and Wheeler's reports that Plaintiff's children had been riding motorized scooters at night in a roadway without supervision when Fuller nearly struck one of the children.  "[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case."  United States v. Fooladi, 703 F.2d 180, 183 (5th Cir. 1983) (alteration in original).  These reports were supported by Davidson's observing two young children run from the edge of the street into Plaintiff's house upon arriving at the scene and

---

[44]  See Doc. 33-29, Ex. aa to Defs.' Mot. for Summ. J., Information; Doc. 33-30, Ex. bb to Defs.' Mot. for Summ. J., Indictment.

determining that Plaintiff's vehicle had recently been driven. Davidson then consulted with an Assistant District Attorney who advised that probable cause to arrest Plaintiff existed.

In arguing that Davidson is not entitled to qualified immunity, Plaintiff emphasizes that she disputes the accounts provided by Fuller and Wheeler and denies that she had driven to the grocery store around the time of the incident.[45] Plaintiff asserts that it is not the province of the court to make credibility determinations and that the jury must be allowed to decide "who is telling the truth."[46] Disputes over such facts, however, do not relate to whether Davidson's conduct was objectively unreasonable. The relevant inquiry is whether genuine disputes of material fact exist regarding the totality of the circumstances within Davidson's knowledge at the time of Plaintiff's arrest.

The court acknowledges that Plaintiff disputes Davidson' claims that he witnessed Plaintiff's children run into the house upon arriving at the scene and that there were groceries in the rear of the minivan. However, "a motion for summary judgment cannot be defeated solely by conclusional allegations that a witness lacks credibility." Thomas v. Great Atl. & Pac. Tea Co., 233 F.3d 326, 331 (5th Cir. 2000). Rather, "when the circumstances

---

[45]    See Doc. 36, Pl.'s Resp. to Defs.' Mot. for Summ. J., p. 7.

[46]    See id.

are conducive to lying, well-supported suspicion of mendacity may serve as a legitimate basis for the fact finder's reasonable inferences concerning the ultimate facts at issue." Id. Here, however, "questions about the credibility of key witnesses" do not "loom . . . large." See id.; see also Seville v. Marcantel, 567 F.3d 156, 165-66 (5th Cir. 2009) (finding that Plaintiffs had provided evidence that would allow the jury to disbelieve police officer where officer had admitted to history of problematic arrests and citizen complaints and was once disciplined for filing a false charge ). Regardless, "the deficiency of any one piece of evidence used to demonstrate probable cause does not, on its own, mean that probable cause did not exist." Crostley, 717 F.3d at 423. In this case, there was enough evidence suggesting culpability outside of the facts disputed by Plaintiff that "a reasonable person in [the officer's] position could have believed he had probable cause to arrest [Plaintiff]." Goodson v. City of Corpus Christi, 202 F.3d 730, 740 (5th Cir. 2000).

Taking into account the totality of the circumstances at the time Plaintiff was arrested, the court finds that Davidson's conduct was not objectively unreasonable. Based on two eyewitness accounts and Davison's own observation that Plaintiff's children were playing near the street, a reasonable officer could have believed with "fair probability" that Plaintiff's children were "in imminent danger of death, bodily injury, or physical or mental

impairment."  See <u>Harrist v. State</u>, Nos. 11-01-00093-CR & 11-01-00094-CR, 2002 WL 32344342, at *2-3 (Tex. App.-Eastland Mar. 28, 2002, no pet.) (unpublished) (finding sufficient evidence of imminent danger where six-year-old child twice crossed busy street); <u>Medearis v. State</u>, No. 11-04-00201-CR, 2006 WL 1913488, at *2-3 (Tex. App.-Eastland July 13, 2006, no pet.) (unpublished) (finding insufficient evidence of imminent danger where defendant's two and three-year-old children were found unsupervised in front yard because the testimony did not show that the children were near the street).  A reasonable officer could have further believed that Plaintiff acted with the requisite mental state by allowing her children to be placed in such danger.  That Davidson sought the input of a Assistant District Attorney who advised that probable cause existed further supports the conclusion that sufficient facts existed to support an arrest.  Accordingly, Davidson is entitled to qualified immunity from Plaintiff's false arrest claim under Section 1983.

## 2. <u>Plaintiff's Claim Against the City</u>

A city can be held liable under Section 1983 only for its own unconstitutional acts, not pursuant to a theory of vicarious liability. <u>Connick v. Thompson</u>, __ U.S. __, 131 S. Ct. 1350, 1359 (2011).  In order to attribute Section 1983 liability to a local government, a plaintiff must demonstrate that the city had a custom or policy that resulted in the constitutional injuries alleged. <u>Monell v. Dep't of Soc. Servs. of N.Y.</u>, 436 U.S. 658, 694 (1978);

see also Connick, 131 S. Ct. at 1359.  "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359.

The challenged official policy must be determined to be the moving force behind, or the actual cause of, the constitutional injury. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001).  If the official policy does not facially violate the constitution, a local government can be held liable if the policy was adopted or maintained by policymakers with deliberate indifference to the known or obvious consequences of the policy. Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 309 (5th Cir. 2004).  Courts have recognized that, under limited circumstances, the failure to train, to supervise, or to discipline employees may give rise to Section 1983 local-government liability. Bd. of Cnt. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997); Pineda v. City of Houston, 291 F.3d 325, 331 (5th Cir. 2002).  However, the Supreme Court has cautioned, "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S. Ct. at 1359.  In order to show deliberate indifference, a plaintiff must show a pattern of similar constitutional violations by untrained employees. Brown, 520 U.S. at 409.

Here, Plaintiff has alleged that the City had a custom of not

training its police officers on four subjects: (1) the proper way to investigate criminal activity; (2) the probable cause standard; (3) the Texas Penal Code; and (4) the Texas Code of Criminal Procedure.  However, in support of these claims, Plaintiff points only to the actions of Davidson on the night of the arrest. Plaintiff alleges that Davidson arrested Plaintiff without probable cause and reasons that, because Davidson claims to have conducted his investigation in accordance with the City's training program, the training program must have been deficient.  Plaintiff presents no evidence regarding how the training provided by the City was constitutionally deficient.

As the Supreme Court has explained, "[i]n resolving the issue of a city's liability, the focus must be on the adequacy of the training program in relation to the tasks the particular officer must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390-91 (1989).  Because Plaintiff's argument consists solely of her allegation that Davidson was unsatisfactorily trained, Plaintiff has introduced insufficient evidence to survive summary judgment on its claim against the City.

## IV.  Conclusion

Based on the foregoing, the court **GRANTS** Defendants' motion to exclude and **RECOMMENDS** that Defendants' motion for summary judgment

be **GRANTED**.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 2nd day of June, 2014.

Nancy K. Johnson
United States Magistrate Judge